In the
United States Court of Appeals
for the Eighth Circuit

Appeal No. **11-3776**

**UNITED STATES OF AMERICA,**
Plaintiff/Appellee,

vs.

**WILLIAM STEGMEIER,**
Defendant/Appellant.

*BRIEF OF AMICUS CURIAE SECOND AMENDMENT
FOUNDATION IN SUPPORT OF APPELLANT URGING REVERSAL
OF THE DISTRICT COURT*

On Appeal from the United States District Court
For the District of South Dakota - Sioux Falls
(CR 11-40038)

Roger Roots, Esq.
113 Lake Drive East
Livingston, MT 59047
(406) 224-1135
*For the Appellant*

Quentin M. Rhoades, Esq.
SULLIVAN, TABARACCI & RHOADES, P.C.
1821 South Avenue West, 3rd Fl.
Missoula, Montana 59801
Telephone: (406) 721-9700
For *Amicus Curiae*

Kevin M. Koliner, Esq.
Assistant U.S. Attorney
District of South Dakota
PO Box 2638
325 S. 1st Avenue, Suite 300
Sioux Falls, SD 57101-3303
(605) 330-4400
*For the Appellee*

# RULE 26.1 DISCLOSURE

Second Amendment Foundation has no parent corporation. No publicly held corporation owns 10% or more of their stock.

Appellate Case: 11-3776    Page: 2    Date Filed: 03/02/2012 Entry ID: 3885891

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTEREST OF AMICUS CURIAE . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RULE 29(C)(5) STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF ISSUE AND MOST APPOSITE CASES . . . . . . . . . 6

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF VIRUS-FREE DISKETTE . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Appellate Case: 11-3776    Page: 3    Date Filed: 03/02/2012 Entry ID: 3885891

# TABLE OF AUTHORITIES

## Case Law

*Bowen v. Kendrick*, 487 U.S. 589 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Boy Scouts of America v. Dale*, 530 U.S. 640 (2000) . . . . . . . . . . 23 - 24

*Clark v. Jeter*, 486 U.S. 456 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Citizens United v. FEC*, ___ U.S. ___, 130 S.Ct. 876, 175 L.Ed.2d 753
(2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

*City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789
(1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 26

*Collins v. Harker Heights*, 503 U.S. 115 (1992) . . . . . . . . . . . . . . 14, 18

*Daniels v. Williams*, 474 U.S. 327 (1986) . . . . . . . . . . . . . . . . . . . . . . 14

*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) . . 6, 10, 11, 13, 15, 16

*Edwards v. South Carolina*, 372 U.S. 229 (1963) . . . . . . . . . . . . . . . . 24

*Eisenstadt v. Baird*, 405 U.S. 438 (1972) . . . . . . . . . . . . . . . . . . . . . . . 14

*Employment Div., Dept. of Human Res. of Oregon v. Smith*,
494 U.S. 872 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Eu v. San Francisco County Democratic Central Comm.*,
489 U.S. 214 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Appellate Case: 11-3776     Page: 4     Date Filed: 03/02/2012 Entry ID: 3885891

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . 16

*Griffin v. Illinois*, 351 U.S. 12 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Griswold v. Connecticut*, 381 U.S. 479 (1965) . . . . . . . . . . . . . . . . . . . 14

*Heller v. District of Columbia*, No. 10–7036, 2011 WL 4551558
    (D.C.Cir. Oct. 4, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Hunter v. Underwood*, 471 U.S. 222 (1985) . . . . . . . . . . . . . . . . . . . . 15

*Huddleston v. United States*, 415 U.S. 814 (1974) . . . . . . . 9, 21-22, 25

*Loving v. Virginia*, 388 U.S. 1 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McDonald v. City of Chicago, Ill.*, ___ U.S. ____, 130 S. Ct. 3020,
    177 L. Ed. 2d 894 (2010) . . . . . . . . . . . . . . . . . 6, 10, 13, 15-16, 19

*Meyer v. Nebraska*, 262 U.S. 390 (1923) . . . . . . . . . . . . . . . . . . . . . . . 14

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v.*
    *Structural Sys. Tech., Inc.*, 964 F.2d 759 (8th Cir. 1992) . . . . . . . 7

*Pierce v. Society of Sisters*, 268 U.S. 51 (1925) . . . . . . . . . . . . . . . . . . 14

*Rochin v. California*, 342 U.S. 165 (1952) . . . . . . . . . . . . . . . . . . . . . . 14

*Roe v. Wade*, 410 U.S. 113 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Poe v. Ullman*, 367 U.S. 497 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Palko v. Connecticut*, 302 U.S. 319 (1937) . . . . . . . . . . . . . . . . . . . . . 18

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) . . . . . 20

*Sabri v. United States*, 541 U.S. 600 (2004) . . . . . . . . . . . . . . . . . . . . 24

Appellate Case: 11-3776   Page: 5   Date Filed: 03/02/2012 Entry ID: 3885891

*Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942) . . . . . . 14

*Snyder v. Massachusetts*, 291 U.S. 97 (1934) . . . . . . . . . . . . . . . . . . . . 18

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
 502 U.S. 105 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979) . . . . . . . . 17, 20

*The Florida Star v. B.J.F.*, 491 U.S. 524 (1989) . . . . . . . . . . . . 6, 20, 22

*Trop v. Dulles*, 356 U.S. 86 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. American Library Ass'n*, 539 U.S. 194 (2003) . . . . . 23

*United States v. Bena*, 664 F.3d 1180 (8th Cir. 2011) . . . . . . . . . . . . 12

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) . . . . . . . . . . . 16

*U.S. v. Guest*, 383 U.S. 745 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) . . . . . . . 15

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) . . . . . . . . 15

*United States v. Monteleone*, 77 F.3d 1086 (8th Cir. 1996) . . . . . . . . . 9

*United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803 (2000) . . 24

*United States v. Raines*, 362 U.S. 17 (1960) . . . . . . . . . . . . . . . . . . . . 24

*United States v. Reese*, 627 F.3d 792 (10th Cir. 2010) . . . . . . . . . . . 16

*United States v. Rush-Richardson*, 574 F.3d 906 (8th Cir.2009) . . . . 7

*United States v. Seay,* 620 F.3d 919 (8th Cir. 2010) . . . . . . . . . . . . . . 7

v

Appellate Case: 11-3776     Page: 6     Date Filed: 03/02/2012 Entry ID: 3885891

*Washington v. Glucksberg*, 521 U.S. 702 (1997) . . . . . . . . . . . . . . . . . . 18

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) . . . . . . . . . . . . . . . . . . . . . . . 15

**Statutes and Rules**

18 U.S.C. § 921(a)(20) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. § 922(d)(1) and (d)(2) . . . . . . . . . . . . . . . . . . . 3, 5, 8-9, 20, 22

FED. R. CRIM. P. 29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Other Authorities**

Adam Winkler, *Heller's Catch–22*, 56 UCLA L. Rev. 1551 (2009) . . . . 11

*The Address and Reasons of Dissent of the Minority of the Convention of Pennsylvania to their Constituents*, reprinted in Bernard Schwartz, *2 The Bill of Rights: A Documentary History* 662 (1971) . . . . . . . . . . . . . . . . . . . . . . . 12

Don B. Kates, Jr., *The Second Amendment: A Dialogue*, Law & *Comtemp. Probs.*, Winter 1986 (1986) . . . . . . . . . . . . . . . . . . . . . . 11

Don B. Kates & Clayton E. Kramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Journal of Convention: Wednesday February 6, 1788*, reprinted in *Debates and Proceedings in the Convention of the Commonwealth of Massachusetts Held in the Year 1788*, at 86 (Boston, William White 1856) . . . . . . . . . . . . . . . . . . . . . . 12

Appellate Case: 11-3776    Page: 7    Date Filed: 03/02/2012 Entry ID: 3885891

C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*,
32 Harv. J.L. & Pub. Pol'y 695 (2009). . . . . . . . . . . . . . . . . . . . . . 12

1 William Blackstone, *Commentaries* . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Appellate Case: 11-3776    Page: 8    Date Filed: 03/02/2012 Entry ID: 3885891

## INTEREST AND IDENTITY OF AMICUS CURIAE

All parties have graciously consented to the filing of a amicus curiae brief by the Second Amendment Foundation. The Second Amendment Foundation (SAF), founded in 1974 by Alan Gottlieb, is a tax-exempt Washington-state non-profit corporation organized under §501(c)(3) of the IRS code. It has been a pioneer in innovative defense of the right to keep and bear arms, through its publications, public education programs and legal action. To fulfill its purpose, the Foundation maintains a headquarters office in Bellevue, WA, and a publishing office in Buffalo, NY.

SAF is dedicated to promoting a better understanding about our Constitutional heritage to privately own and possess firearms. To that end, it carries on many educational and legal action programs designed to better inform the public about the gun control debate. The Foundation has a noteworthy track record in supporting legal actions, or amicus briefs, in cases affecting the right to keep and bear arms. Successful court actions have been brought in many states—from overturning the San Francisco handgun ban to blocking a ban on the

1

sale of handguns in New Haven, Connecticut. The Foundation also has sponsored challenges to unfair concealed carry license practices in several states, including Ohio's prohibition on concealed carry. One Foundation suit helped end 19 years of Los Angeles police denial of California CCWs, paving the way for issuance to average citizens. The Foundation has helped fund lawsuits against the 1994 federal gun ban, the California ban, and countersued cities that sued the gun industry.

In this particular case, SAF is concerned with the standard of review employed by courts adjudicating second amendment issues. Although the United States Supreme Court, in its *Heller* decision, settled the issue of whether the Second Amendment to the U.S. Constitution protects an individuals rights, it left open the question of what standard of review courts should bring to bear when applying the protections of the Second Amendment against inevitable governmental encroachment. Amicus SAF and its members and constituents have a keen interest in assisting the nation's judiciary, as *amicus curiea*, in its work of grouting IN the wide Constitutional interstices left open by *Heller*'s limited holding.

2

## RULE 29(c)(5) STATEMENT

SAF is appearing *amicus curiae* on the authority of its vice president and founder, Alan Gottlieb, and approval of its governing board of trustees. No party's counsel authored the amicus brief, in whole or in part. No party's counsel contributed money to fund preparing or submitting the brief. No person, other than the amicus curiae, its members, or its counsel, contributed money that was intended to fund preparing or submitting the brief.

## STATEMENT OF THE CASE

The issue addressed by Amicus SAF concerns Count 3 of the indictment issued below. Appellant William Stegmeier was charged under Count 3, with violating 18 U.S.C. § 922(d)(1) and (d)(2).[1] After

---

[1] 18 U.S.C.A. § 922(d), in relevant part, reads:

It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person--

(1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) is a fugitive from justice;....

Appellate Case: 11-3776     Page: 11     Date Filed: 03/02/2012 Entry ID: 3885891

trial on the merits was had, the jury convicted Stegmeier under Counts 1 and 3. Stegmeier then filed a motion for acquittal of Count 3 based in part upon the protections afforded him by the Second Amendment of the U.S. Constitution. U.S.C.A. Const. amend. II.[2] The motion was denied, and his conviction under Count 3 is now on appeal.

## STATEMENT OF FACTS

In this case, it was not disputed at trial that Stegmeier owned a motor home, and used it for the purposes of temporary living quarters. He would live in it, as needed, at his company's remote job sites. E.g., Trial Tr. 252:23-253:3; 318:19-319:13. It is not disputed that Stegmeier kept a revolver in the motor home, *id.*, 202:1-12, or that he kept it for the purpose of self-defense. *Id.*, 285:22-24. It is not disputed that Stegmeier allowed his employee and friend, Tom Kelley, to live in the motor home. *Id.*, 383:21-385:4.

---

[2]      U.S. Const. amend. II, reads:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

4

In addition, it is not disputed that, upon Kelley's taking up residence, Stegmeier warned him that the revolver was stored in the closet of the motor home. *Id.*, 385:5-21. Stegmeier's purpose in doing so was to shield Kelley from undue alarm if he came across the revolver while living there. *Id.* There was no evidence at trial that Kelley ever touched the revolver. Even though law enforcement carefully examined the article, they did not find Kelley's fingerprints on either it or the ammunition with which it was loaded. *Id.*, 250:8-19. The Government produced no evidence at trial, none, that Stegmeier ever gave Kelley permission to even touch the revolver.

What Stegmeier did dispute was whether he "disposed" the revolver to Kelley, who he may have had cause to believe was either a felon or a fugitive, when he allowed Kelley to live in his motor home. As the prosecution put it, was the motor home the legal equivalent of giving Kelley "a box with a gun in it," as if the motor home had no other purpose. Trial Tr. 409:16-21. Upon considering the evidence, the jury found Stegmeier in fact had "disposed" of the handgun to Kelley, and convicted him under 18 U.S.C. § 922(d)(1) and (d)(2).

Appellate Case: 11-3776    Page: 13    Date Filed: 03/02/2012 Entry ID: 3885891

## STATEMENT OF ISSUE AND MOST APPOSITE CASES

Stegmeier, a law-abiding citizen, did not allow Kelley permission even to touch his revolver. He therefore enjoys a Second Amendment right to store the handgun in his motor home, even though he let Kelley, a felon and fugitive, stay in it as well. *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) (Second Amendment protects an individual right for law-abiding citizens)*; McDonald v. City of Chicago, Ill.*, ___ U.S. ___, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) (Second Amendment protects a fundamental right); *Clark v. Jeter*, 486 U.S. 456 (1988) ("classifications affecting fundamental rights are given the most exacting scrutiny" (citation omitted)); *Citizens United v. FEC*, ___ U.S. ___, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (same); *The Florida Star v. B.J.F.*, 491 U.S. 524 (1989) (interest not compelling where legislature allows exceptions to apply); *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984) (statutes the effect more than the targeted evil are not narrowly tailored).

## STANDARD OF REVIEW

The U.S. Constitutional issue addressed by Amicus SAF was

6

raised below on a FED. R. CRIM. P. 29 motion for judgment of acquittal. See, Order RE: Mot. for J. of Acquittal (December 2, 2011); Dkt. No. 66. Although all the evidence should be viewed in a light most favorable of the verdict, the district court's denial of a motion for judgment of acquittal is reviewed *de novo*. *United States v. Rush-Richardson*, 574 F.3d 906, 909 (8th Cir.2009). Review of federal Constitutional questions is also *de novo*. *United States v. Seay,* 620 F.3d 919, 923 (8th Cir. 2010) cert. denied, 131 S. Ct. 1027, 178 L. Ed. 2d 849 (U.S. 2011). *De novo* review admits no deference to the district court. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Structural Sys. Tech., Inc.*, 964 F.2d 759, 761 (8th Cir. 1992).

## SUMMARY OF THE ARGUMENT

Stegmeier is a law-abiding citizen. As such he is entitled to the full protection of the natural and fundamental right, enshrined in the Second Amendment, to keep a handgun in his dwelling for self-defense.

Because the right of self-defense has been held to be "necessary to our system of ordered liberty," any infringement upon it is reviewed under "strict scrutiny." In other words, the Government must establish

7

that the statute at issue, 18 U.S.C. § 922(d)(1 and (d)(2), serves a compelling government interest in a narrowly tailored way that is the least restrictive possible on Stegmeier's right of self-defense in his residence. But the Government cannot satisfy strict scrutiny. Keeping guns away from felons and fugitives is not a priority of the "highest order" because Congress has created statutory exceptions to the general policy. Moreover, the statutory infringement on homeowners's rights of self-defense entailed in the relevant Congressional enactments is too sweeping to qualify as "narrowly tailored."

As applied to Stegmeier in this case, 18 U.S.C. § 922(d)(1) and (d)(2) violates the Second Amendment. His conviction for disposing a firearm to Kelley, a felon and fugitive from justice, is prejudicial, should therefore be vacated.

## ARGUMENT

## 1. Stegmeier, as a law-abiding citizen, is endowed with a natural and fundamental Constitutional right to keep a handgun in his dwelling.

It is unlawful to "sell or dispose any firearm or ammunition to" a felon or a "fugitive from justice." 18 U.S.C.A. § 922(d)(1) and (d)(2). A

8

sale is not at issue here. Rather, the question turns on whether Stegmeier "disposed to" Kelley the subject revolver. A disposal occurs "when a person 'comes into possession, control, or power of disposal of a firearm.'" *United States v. Monteleone*, 77 F.3d 1086, 1092 (8th Cir. 1996)(quoting *Huddleston v. United States*, 415 U.S. 814, 823 (1974)). In this case, in order to convict, the jury had to find that allowing Kelley, his houseguest, to stay in the motor home where Stegmeier had stored a revolver in the closet, and by the simple act of telling Kelley it was there, Stegmeier conveyed possession, control or power of disposal of the revolver.

Stegmeier has challenged, in his principal brief, the sufficiency of evidence for this finding. Amicus SAF takes no position on the issue, and assumes for the sake of its argument that the jury finding was supported by sufficient evidence. Given such an assumption, Amicus SAF contends that as applied to Stegmeier's case, 18 U.S.C. § 922(d)(1) and (d)(2) violate his fundamental right of self-defense. As a result, his conviction under Count 3 of the Indictment is void, and should be reversed.

9

Bans on handgun possession in the home violate the Second

Amendment. *Dist. of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

This is because handguns are uniquely efficacious in exercising the

"natural right" of self-defense, which right was not conferred by the

Second Amendment, but is inherent characteristic of personhood. *Id.*,

554 U.S. at 612. More important, this characteristic has been held by

the Supreme Court to constitute a "fundamental right," that is

"necessary to our system of ordered liberty." *McDonald v. City of*

*Chicago, Ill.*, ___ U.S. ____, 130 S. Ct. 3020, 3042, 177 L. Ed. 2d 894

(2010). Thus, under *Heller*, law-abiding citizens have a fundamental

right to keep handguns in their own dwelling places.

Admittedly, the right to keep handguns in ones' dwelling for self-

defense is not unlimited:

> Like most rights, the right secured by the Second
> Amendment is not unlimited.... Although we do not
> undertake an exhaustive historical analysis today of the full
> scope of the Second Amendment, nothing in our opinion
> should be taken to cast doubt on longstanding prohibitions
> on the possession of firearms by felons and the mentally ill,
> or laws forbidding the carrying of firearms in sensitive
> places such as schools and government buildings, or laws
> imposing conditions and qualifications on the commercial
> sale of arms.

Appellate Case: 11-3776    Page: 18    Date Filed: 03/02/2012 Entry ID: 3885891

*Heller*, 554 U.S. at 626. This Court has had occasions to contemplate the scope of *Heller*, and very recently issued this thoughtful discussion:

> *Heller* characterized the Second Amendment as guaranteeing "the right of **law-abiding, responsible** citizens to use arms in defense of hearth and home." *Id.* (emphasis added). Scholarship suggests historical support for a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible. The Court's discussion is consistent with the view that in "classical republican philosophy, the concept of a right to arms was inextricably and multifariously tied to that of the 'virtuous citizen,' " such that "the right to arms does not preclude laws disarming the unvirtuous (i.e. criminals) or those who, like children or the mentally unbalanced, are deemed incapable of virtue." Don B. Kates, Jr., *The Second Amendment: A Dialogue*, Law & Comtemp. Probs., Winter 1986, at 146 (1986); see also Don B. Kates & Clayton E. Kramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339, 1359 & n. 120 (2009); Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 480–81 (1995); cf. Adam Winkler, *Heller's Catch–22*, 56 UCLA L. Rev. 1551, 1563 n.67 (2009). In the 1760s, Blackstone explained that English subjects enjoyed a right to have arms for their defense, "suitable to their condition and degree" and "under due restrictions." 1 William Blackstone, *Commentaries* *139. This right and others, he recounted, were subject to "necessary restraints," viewed as "gentle and moderate," and designed to prevent "what would be pernicious either to ourselves or our fellow citizens." *Id.* at *140. Proposals from the Founding period reflect a similar understanding of the pre-existing right to bear arms. A proposal of Samuel Adams at the Massachusetts Ratifying Convention would have forbidden Congress to prevent "the people of the United

States, who are peaceable citizens, from keeping their own arms." *Journal of Convention: Wednesday February 6, 1788*, reprinted in *Debates and Proceedings in the Convention of the Commonwealth of Massachusetts Held in the Year 1788*, at 86 (Boston, William White 1856) (emphasis added). Pennsylvania delegates in 1787 similarly proposed a constitutional provision stating that "no law shall be passed for disarming the people or any of them unless for crimes committed, or real danger of public injury from individuals." *The Address and Reasons of Dissent of the Minority of the Convention of Pennsylvania to their Constituents*, reprinted in Bernard Schwartz, *2 The Bill of Rights: A Documentary History* 662, 665 (1971) (emphasis added). See generally C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695 (2009).

*United States v. Bena*, 664 F.3d 1180, 1183-84 (8th Cir. 2011) (emphasis the Court's.)

In this case, at all relevant times, Stegmeier was a "law-abiding, responsible citizen." *Id.* As a "peaceable citizen," with no history of "crimes committed," he posed "no real danger of public injury." *Id.* Stegmeier was likewise not among the "unvirtuous (i.e. criminals) or those who, like children or the mentally unbalanced, are deemed incapable of virtue." *Id.* Thus, he was under no legal disability and had no criminal or other history that would deprive him of the same Second Amendment protections that were enjoyed by, for example, the

12

petitioner in *Heller*.

The question is then, despite Stegmeier's right of Second Amendment protection, can Congress nevertheless forbid him from keeping a revolver in a motor home he regularly uses as a temporary residence, just because his house guest might be a person prohibited from the possession of firearms.

## 2. Because the right of self-defense protected by the Second Amendment is has been held to be "necessary to our system of ordered liberty," any infringement upon it is reviewed under "strict scrutiny."

The Supreme Court has not yet articulated a particular level of scrutiny that courts should apply to Second Amendment challenges, but it has stated that rational basis review is not appropriate. See *Heller*, 554 U.S. at 629 n. 27 ("Obviously, [a rational basis] test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms."). Nevertheless, the apt level of review flows directly from its ruling in *McDonald*, where the Court confirmed that the right to keep and bear arms is a "fundamental" one. See 130 S.Ct. at 3042. In

13

cases involving fundamental rights, the Supreme Court applies a review of "strict scrutiny" to legislation that impinges on the fundamental right. See, e.g., *Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("classifications affecting fundamental rights are given the most exacting scrutiny" (citation omitted)).[3]

The application of strict scrutiny requires the Government, not the citizen, to prove that its law "furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. FEC*, ___ U.S. ___, 130 S.Ct. 876, 898, 175 L.Ed.2d 753 (2010) (internal quotation marks omitted). Other of the many Supreme Court decisions that applied the strict scrutiny test in defense of fundamental rights include,

---

[3]     Such authority abounds. See *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992) (Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them' ") (quoting *Daniels v. Williams*, 474 U.S. 327, 33 (1986)); *Eisenstadt v. Baird*, 405 U.S. 438 (1972) (to use contraception); *Loving v. Virginia*, 388 U.S. 1 (1967) (the right to marry); *Griswold v. Connecticut*, 381 U.S. 479  (1965) (to marital privacy); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942) (to have children); *Griffin v. Illinois*, 351 U.S. 12, 16–18 (1956) (due process in criminal matters)*; Rochin v. California*, 342 U.S. 165 (1952) (to bodily integrity)*; Pierce v. Society of Sisters*, 268 U.S. 51 (1925) (to direct the education and upbringing of one's children) *Meyer v. Nebraska*, 262 U.S. 390 (1923) (same).

14

*Hunter v. Underwood*, 471 U.S. 222 (1985) (the right to vote); *U.S. v. Guest*, 383 U.S. 745 (1966) (travel); *Roe v. Wade*, 410 U.S. 113, 152–153 (1973) (privacy); *Wisconsin v. Yoder*, 406 U.S. 205, 214–215 (1972) (specific guarantees in the Bill of Rights, *e.g.*, freedom of religion).

Still, despite *McDonald's* admonition that the right to keep and bear arms is fundamental in nature, lower courts insist on reading the Second Amendment with the most limited possible lens. Post-*Heller* they have settled on a two-step test that first (a) narrows scope of the fundamental right; and then (b) applies low standards of judicial scrutiny against legislation that burdens the right. See *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) cert. denied, 132 S. Ct. 756 (U.S. 2011). For example, the Third Circuit fashioned an approach which applies these two winnowing steps sequentially. *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) cert. denied, 131 S. Ct. 958, 178 L. Ed. 2d 790 (U.S. 2011). First, the court considers "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." If it does not, the inquiry is complete. If it does, the court then evaluates the law under "some form"

Appellate Case: 11-3776    Page: 23    Date Filed: 03/02/2012 Entry ID: 3885891

of what it calls a "means-end scrutiny." *Id.* (internal citation omitted).

This method of effectively restricting *Heller* and *McDonald* to their facts

has been adopted in other circuits as well. See *Heller v. District of*

*Columbia*, No. 10–7036, 2011 WL 4551558, at \*5 (D.C.Cir. Oct. 4, 2011);

*Ezell v. City of Chicago*, 651 F.3d 684, 702–04 (7th Cir. 2011); *United*

*States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v.*

*Reese*, 627 F.3d 792 (10th Cir. 2010) cert. denied, 131 S. Ct. 2476, 179

L. Ed. 2d 1214 (U.S. 2011).

Amicus SAF urges this Court to reject its sister-Circuits' confining

view of the natural, pre-Constitutional and fundamental right of self-

defense. Not only is such a grudging analysis false to the central

holdings of *Heller* and *McDonald*, but any relaxation of the long

established Constitutional standards threatens to undermine all of

fundamental rights jurisprudence:

> We are oath-bound to defend the Constitution. This
> obligation requires that congressional enactments be judged
> by the standards of the Constitution. The Judiciary has the
> duty of implementing the constitutional safeguards that
> protect individual rights. ***When the Government acts to take
> away the fundamental right of citizenship, the safeguards of
> the Constitution should be examined with special diligence.***

16

The provisions of the Constitution are not time-worn adages or hollow shibboleths. They are vital, living principles that authorize and limit governmental powers in our Nation. They are the rules of government. When the constitutionality of an Act of Congress is challenged in this Court, we must apply those rules. If we do not, the words of the Constitution become little more than good advice.

When it appears that an Act of Congress conflicts with one of these provisions, we have no choice but to enforce the paramount commands of the Constitution. We are sworn to do no less. We cannot push back the limits of the Constitution merely to accommodate challenged legislation. We must apply those limits as the Constitution prescribes them, bearing in mind both the broad scope of legislative discretion and the ultimate responsibility of constitutional adjudication. We do well to approach this task cautiously, as all our predecessors have counseled. But the ordeal of judgment cannot be shirked.

*Trop v. Dulles*, 356 U.S. 86, 103 (1958) (emphasis added).

When rights held to be fundamental are at stake, courts should not "water down" the strict scrutiny analysis. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993); *Employment Div., Dept. of Human Res. of Oregon v. Smith*, 494 U.S. 872, 888 (1990). To do so would result in a dangerous weakening of vital jurisprudence that sustains the judiciary as citizens' ultimate bulwark of individual liberty.

17

> Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," *id.*, at 503, 97 S.Ct., at 1938 (plurality opinion); *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) ("so rooted in the traditions and conscience of our people as to be ranked as fundamental"), and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed," *Palko v. Connecticut*, 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. *Flores*, supra, at 302, 113 S.Ct., at 1447; *Collins*, supra, at 125, 112 S.Ct., at 1068; *CruzanF*, *supra*, at 277-278, 110 S.Ct., at 2850-2851. Our Nation's history, legal traditions, and practices thus provide the crucial "guideposts for responsible decisionmaking," Collins, supra, at 125, 112 S.Ct., at 1068, that direct and restrain our exposition of the Due Process Clause.

*Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). This is why the Supreme Court is so careful when deciding whether a right is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* But once a fundamental right is identified and described, it deserves the greatest of all possible deference: "'As we stated recently in *Flores*, the Fourteenth Amendment 'forbids the government to infringe ... "fundamental" liberty interests at all, no

18

matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.'" *Id.*

Here, the Second Amendment preserves rights of such magnitude. "In sum, it is clear that the framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald*, 130 S. Ct. at 3042. This holding, then, resolves the question. Congressional infringements on the right of self-defense in one's residence, as articulated in *Heller*, are subject to strict scrutiny. "[B]y common understanding throughout the Engligh-speaking world," the most fundamental aspect of 'liberty,'" is "the privacy of the home in its most basic sense, and it is this which requires that the statute be subjected to 'strict scrutiny.'" *Poe v. Ullman*, 367 U.S. 497, 548 (1961).

## 3. The Government cannot satisfy strict scrutiny.

### A. Keeping guns away from felons and fugitives is not a priority of the highest order because Congress has created statutory exceptions.

Turning now to the strict scrutiny analysis, the Government bears the burden to prove 18 U.S.C. § 922(d)(1) and (d)(2), as applied in this

19

case, are (1) narrowly tailored, to serve (2) a compelling state interest. E.g., *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 222 (1989). In order for the Government to make such a showing, given the facts of this case, is must establish that the laws at issue do not "unnecessarily circumscrib[e]" Stegmeier's right to self defense in his home. E.g., *Republican Party of Minnesota v. White*, 536 U.S. 765, 774-75 (2002).

Here, the Government cannot show it has a compelling interest in proscribing a homeowner from having handguns in a home where there is a felon or fugitive as a house guest. It is established in strict scrutiny jurisprudence that "a law cannot be regarded as protecting an interest 'of the highest order' ... when it leaves appreciable damage to that supposedly vital interest unprohibited." *The Florida Star v. B.J.F.*, 491 U.S. 524, 540 (1989)(SCALIA, J., concurring in part and concurring in judgment) (citation omitted)). See *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 119–120 (1991). Cf. *Florida Star v. B.J.F.*, supra, at 540–541, 109 S.Ct., at 2612–13; *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 104–105 (1979); *id.*, at 110, 99 S.Ct.,

20

at 2674–75 (REHNQUIST, J., concurring in judgment). "There also can be no doubt of Congress' intention to deprive the ... the criminal, and the fugitive of the use of firearms." *Huddleston*, 415 U.S. at 827. But Congress also included substantial exceptions to the general rule.

Pursuant to 18 U.S.C. § 921(a)(20), a felon whose "conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."[4] This

---

[4]    18 U.S.C.A. § 921(a) (20) reads:

The term "crime punishable by imprisonment for a term exceeding one year" does not include--

(A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or

(B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in

21

exception means that Stegmeier and others like him are allowed to sell
or dispose firearms to some felons, if they have had their rights
restored, but not others. Congress has also "carefully carved out
exceptions" such as for a dealer "returning a firearm" to the person from
whom it was received, even if he is a felon or fugitive, "and for an
individual mailing a firearm to a dealer 'for the sole purpose of repair or
customizing.'" *Huddleston*, 415 U.S. at 822 (quoating 18 U.S.C. §
922(a)(2)(A)). It is surely within Congressional prerogatives to pursue
these and similar exceptions. But their existence also establishes that
keeping guns away from felons and fugitives is not an interest "of the
highest order." It therefore does not satisfy the criteria for a compelling
government interest. *The Florida Star,* 491 U.S. at 540.

## B. The statutory infringement on homeowners's rights of self-defense is not narrowly tailored.

Unlike a facial challenge, which views a statute's constitutionality

which the proceedings were held. Any conviction which has
been expunged, or set aside or for which a person has been
pardoned or has had civil rights restored shall not be
considered a conviction for purposes of this chapter, unless
such pardon, expungement, or restoration of civil rights
expressly provides that the person may not ship, transport,
possess, or receive firearms.

22

from the perspective of a run-of-the-mill target, Stegmeier's as-applied

challenge focuses on his particularized facts and circumstances in

deciding whether the law that may be validly applied to other persons

must be suspended in the factual context before the Court. An

as-applied challenge is, therefore, necessarily fact-intensive, requiring a

party to place evidence before the court justifying a

constitutionally-driven individualized exemption. See, e.g., *United

States v. American Library Ass'n*, 539 U.S. 194, 215 (2003) (Kennedy,

J., concurring) (rejecting facial challenge but permitting individuals to

bring as-applied challenges based on specific, concrete factual showing);

*Boy Scouts of America v. Dale*, 530 U.S. 640, 648-54 (2000) (concluding

that specific facts had been adduced showing that application of

anti-discrimination statute imposed substantial burden on the litigant's

freedom to associate).[5]  Indeed, the intensely fact-specific nature of an

---

[5]     *See also, Bowen v. Kendrick*, 487 U.S. 589, 623 (1988)
(O'Connor, J., concurring) (calling for District Court to make "detailed
factual findings" about program's administration in adjudicating an
as-applied Establishment Clause challenge to financial aid statute); *id.*
at 625 (Kennedy, J., concurring) (insisting on specific evidence about
how religious entities "spend [their] grant[s]" to adjudicate an
as-applied challenge); *Sabri v. United States*, 541 U.S. 600, 609 (2004)
(preferring as-applied to facial challenges because the latter "carries too

Appellate Case: 11-3776     Page: 31     Date Filed: 03/02/2012 Entry ID: 3885891

as-applied challenge is why the U.S. Supreme Court insists on conducting an independent *de novo* review of the record to ensure that improper fact finding does not lead to a denial of constitutional rights. See *Boy Scouts*, 530 U.S. at 648-49; *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963).

Again, in addition to the compelling government interest prong, the Government must show that the statute under which it is prosecuting Count 3 is narrowly tailored. To do so, it must establish that the statute targets and eliminates no more than the exact source of the "evil" Congress seeks to remedy. *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808-810 (1984). If a less restrictive alternative would serve the Congressional purpose, it must use that alternative *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813 (2000).

In this particular case, the Government cannot show that Congress has used the least restrictive alternative. Here, the intent of

---

much promise of 'premature interpretatio[n] of statutes' on the basis of factually bare-bones records" (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)).

Appellate Case: 11-3776    Page: 32    Date Filed: 03/02/2012 Entry ID: 3885891

Congress is to provide for a comprehensive ban. *Huddleston*, 415 U.S. at 822. Thus, the statute provides a sweeping definition which not only encompasses the evil it is purportedly targeting – sales or delivery of firearms to felons and fugitives – but has ensnared someone who merely allowed a house guest to stay alone in the same residence where the handgun was stored in a closet. Stegmeier did not give his revolver to Kelley, permit him to use it, or so much as even suggest that he take advantage of it in the event of need. Rather, Stegmeier merely warned Kelley it was there, as a measure of both courtesy and caution, so Kelley would not be upset or unduly alarmed if ever he came across it. This information also gave Kelley an opening to object to the presence of a firearm, something Kelley should have volunteered at that juncture for the legal safety of everyone involved. And ultimately, the lack of fingerprints on the revolver indicates that Kelley never handled it.

By extending the statute's sweep not only to delivery of possession or custody of firearms to felons or fugitives, but clear to prohibiting them from even occupying a residence in which firearms are stored, Congress has not narrowly tailored the statute to accomplish the

Appellate Case: 11-3776    Page: 33    Date Filed: 03/02/2012 Entry ID: 3885891

targeted evil by the least restrictive means. Thus, not only does the statute as applied here flunk the compelling government interest test, it also fails the "narrowly tailored" element. It is therefore constitutionally infirm.

## CONCLUSION

Accordingly, the Court should reverse the trial court's denial of Stegmeier's motion for acquittal, and vacate his judgment of conviction on Count 3 of the indictment.

Dated this 29th day of February, 2012.

Respectfully Submitted,
SULLIVAN, TABARACCI & RHOADES, P.C.


By:_____
Quentin M. Rhoades
*For the Appellant*




## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

26

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because, according to the word count function of WordPerfect X3, this brief contains 5,326 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief is prepared in a proportionally spaced typeface using WordPerfect X3 Century Font type and a14 point font size.

Dated this 29th day of February, 2012.

Respectfully Submitted,
SULLIVAN, TABARACCI & RHOADES, P.C.


By:____*/s/ QuentinM. Rhoades*_____
        Quentin M. Rhoades
        *For the Appellant*

27

# CERTIFICATE THAT DISKETTE HAS BEEN SCANNED AND IS VIRUS-FREE

1.     The diskette enclosed herewith complies with the Federal Rules of Appellate Procedure and the Eighth Circuit Local Rules, because Appellant's Principal Brief was published to a pdf document so that it is searchable; and

2.     The diskette submitted to the court is virus-free.

Dated this 29th day of February, 2012.

Respectfully Submitted,
SULLIVAN, TABARACCI & RHOADES, P.C.

By: _/s/ QuentinM. Rhoades_____
Quentin M. Rhoades
*For the Appellant*

28

# CERTIFICATE OF SERVICE

This is to verify that on this 29th day of February, 2012, a copy of the foregoing was duly served on the following persons by the following means:

```
   1      CM/ECF
_____   Hand Delivery
_____   Mail
_____   Overnight Delivery Service
_____   Certified Return Receipt Requested Mail
_____   Registered Mail
_____   Fax
_____   E-Mail
```

1.  Kevin M. Koliner, Esq.
    Assistant U.S. Attorney
    District of South Dakota
    PO Box 2638
    325 S. 1st Avenue, Suite 300
    Sioux Falls, SD 57101-3303

1.  Roger Roots, Esq.
    113 Lake Drive East
    Livingston, MT 59047

*/s/ QuentinM. Rhoades*

29